UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ANTHONY PETERSON,** | **Civil Action No. 14-3346 (SDW)** |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **UNITED STATES OF AMERICA,** | |
| **Defendants.** | |

**WIGENTON,** District Judge:

Presently before the Court is the motion of Anthony Peterson ("Petitioner") to vacate, set aside, or correct his May 2011 judgment of conviction and sentence.  (ECF No. 5).  Petitioner initially filed his motion on or about May 23, 2014.  (EF No. 1).  The initial motion was administratively terminated on September 30, 2014.  (ECF No. 4).  On October 20, 2014, Petitioner filed his amended motion to vacate.  (ECF No. 5).  Following an order to answer and two extensions granted by this Court, the Government responded to Petitioner's motion on February 6, 2015.  (ECF No. 11).  Also before this Court are the Government's motion to dismiss Petitioner's motion to vacate (ECF No. 12), and Petitioner's motion to strike the Government's motion to dismiss.  (ECF No. 14).  For the following reasons, this Court will deny Petitioner's § 2255 motion, will deny Petitioner a certificate of appealability, and will deny Petitioner's motion to strike.  In light of this Court's denial of Petitioner's § 2255 motion on the merits, this Court will also deny as moot the Government's motion to dismiss.

## I. BACKGROUND

The Third Circuit summarized the underlying facts of Petitioner's case in their opinion affirming his conviction as follows:

On March 12, 2009, it was nearing closing time at a Bank of America branch in Somerset, New Jersey, when four men drove a stolen Jeep Cherokee into the bank's parking lot. As one man waited in the car with the engine running, the other three entered the bank wearing gloves and masks of different United States presidents and carrying guns. Two of these masked men were identified at trial as Muhammad and [Petitioner]. The men took the security guard's gun. They then ordered the tellers and the bank's sole patron to get down on the floor. One of the men then pointed his gun at the tellers and demanded cash; he then emptied the tellers' cash drawers into a bag.

A second man put a gun to a bank employee's head and ordered him to open the vault. The vault opened and the men removed cash. The men then ordered everyone in the bank to stay on the ground, and left the bank with, among other items, the security guard's gun and over $93,000 in cash. The cash included "bait bills" which contained two hidden GPS devices.

Several bystanders saw the robbers leave the bank and one witness called 911, reporting the Jeep's license plate. The witness also reported that the Jeep turned into an apartment complex parking lot about 500 feet from the bank. In the lot, the robbers left the Jeep, still running, and a shotgun, and jumped into a stolen Ford minivan. The van left the parking lot as police officers entered to investigate. After an eyewitness reported the vehicle swap, which the officers reported over the police dispatch radio, another officer who was approaching the apartment complex observed the van and began following it.

During the ensuing chase, the robbers fired shots at the officer on the road and in an open square in New Brunswick, New Jersey. The officer radioed that shots had been fired. Ultimately, the chase continued through a residential area until the van crashed into a security gate at St. Peter's University Hospital. The robbers exited the van, and a firefight between them and the police ensued. The robbers ran through a residential neighborhood, some taking off layers of clothing as they ran. Finally, a police officer trapped the robbers in a cul-de-sac, where two of them pointed their guns at the

2

police.  The police fired, striking three of the four robbers. Police then arrested the four robbers.

Muhammad, [Petitioner], and another co-defendant were charged in the U.S. District Court for the District of New Jersey with three counts: (1) conspiracy to commit bank robbery by force and violence, or intimidation, contrary to 18 U.S.C. § 2113(a), in violation of 18 U.S.C. § 371; (2) armed bank robbery by force and violence, or intimidation in violation of 18 U.S.C. § 2113(a), (d), and § 2; and (3) use of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and § 2.  The co-defendant pleaded guilty. Muhammad and [Petitioner] proceeded to trial on November 3, 2010.

During the five-day jury trial, the Government presented the testimony of bank employees, a bank security manager, and eyewitnesses to different stages of the escape, chase, apprehension, and subsequent investigation, including various police officers and detectives.  One of the detectives testified as an expert in latent fingerprint processing, and another detective testified as an expert in firearms operation.  An FBI forensic examiner also testified as an expert in DNA profiling and statistics.  The Government also called the owners of the stolen vehicles as witnesses.  Additional trial evidence included bank security camera footage, GPS devices, physical evidence found in the abandoned van (including the masks worn by the perpetrators), and audio recordings of police radio dispatches.  The Government also introduced certain articles of clothing (e.g., pants, sweatshirts, gloves, and shoes) that the police recovered from the defendants at the time of their arrest or shortly thereafter.

On November 9, 2010, the jury convicted Muhammad and [Petitioner] of all three counts against them.[1]   The District Court sentenced Muhammad to a within-guidelines imprisonment term of 225 months.  The District Court calculated Muhammad's guideline range for imprisonment as 87 to 108 months based upon a total offense level of 27 and a criminal history category of III. Additionally, he received a mandatory consecutive sentence of 120 months on Count Three for use of a firearm during a violent crime under § 924(c).

---

[1] The jury also unanimously determined beyond a reasonable doubt that a firearm utilized in the robbery had been discharged in the course of the offense.  (Docket No. 09-265 at ECF No. 94).

> [Petitioner] also received a within-guidelines imprisonment term, totaling 562 months.[2]  Having previously been convicted of a crime under 18 U.S.C. § 924(c), [Petitioner]'s mandatory minimum consecutive sentence on Count Three was 25 years.  The District Court also entered a revocation judgment against [Petitioner], who was on supervised release at the time of the robbery. For the revocation, the District Court sentenced him to an additional 81 months to be served consecutively with his sentence on the robbery charges.

*United States v. Muhammad*, 512 F. App'x 154, 156-58 (3d Cir.), *cert. denied sub nom.*,

*Peterson v. United States*, 133 S. Ct. 2783 (2013).

Following their sentencing, Petitioner and Muhammad appealed, and their appeals were consolidated for the purposes of the Third Circuit's opinion.  *Id.*  On appeal, Petitioner and his co-defendant raised numerous claims of error at trial, all of which were rejected by the Third Circuit, which affirmed both Petitioner's conviction and sentence.  *Id.* at 158-70.  One specific claim raised on direct appeal has a direct bearing on the ineffective assistance of counsel arguments Petitioner raises here.  Petitioner's first claim on appeal was that his "right to cross-examination under the Confrontation Clause was violated when the District Court allowed [the] FBI forensic expert, Nicole Nicklow, to testify about the results of, and procedures used to perform, certain DNA tests" which she did not, herself, perform.  *Id.* at 158.  The Third Circuit rejected that argument for the following reasons:

> [e]ven assuming, arguendo, the District Court erred in admitting Nicklow's testimony, we conclude such error is harmless. An evidentiary error that runs afoul of the Confrontation Clause is harmless only if we conclude beyond a reasonable doubt that the error did not contribute to the jury's judgment of conviction.  *See United States v. Lore*, 430 F.3d 190, 209 (3d Cir.2005).  Our Court "consider[s] numerous factors in assessing whether the erroneous admission of testimonial evidence in violation of the Confrontation Clause was harmless to the defendant, including the importance of

---

[2] The length of Petitioner's sentence was the result of his status as an armed career criminal. *Muhammad*, 512 F. App'x at 157 n. 2.

the testimony to the Government's case, the cumulative nature of the evidence, the existence of corroborating evidence, the extent of cross-examination allowed in the case, and the strength of the Government's case as a whole." *United States v. Jimenez*, 513 F.3d 62, 78 (3d Cir.2008) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).

Considering all of these factors—particularly the breadth and nature of the other overwhelming and cumulative evidence that the Government offered at trial—it appears beyond a reasonable doubt that the guilty verdicts rendered on all three counts were not attributable to any constraint on Muhammad and [Petitioner's] rights to confrontation that may have resulted from Nicklow's testimony.  The Government's case-in-chief rendered any evidence concerning DNA testing cumulative, if not superfluous.[3]   The Government's case against Muhammad and [Petitioner] was formidable.  The evidentiary record connecting Muhammad and [Petitioner] to the crimes was overwhelming and convincing, particularly including the testimony of numerous witnesses who were present at virtually every stage of the robbery, chase, and apprehension, as well as bank surveillance footage in which the robbers could be seen wearing apparel that was confiscated from the defendants at the time of their arrest, and a wide array of physical evidence recovered from the getaway vehicles and the defendants themselves, including the stolen cash and security guard's gun, as well as the perpetrators' own weapons, apparel, and masks. Accordingly, to the extent that allowing Nicklow's testimony constituted error, it was harmless.

*Muhammad*, 512 F. App'x at 158-59.

Following the affirmance on direct appeal, Petitioner petitioned for certiorari, which was

denied on June 3, 2013.  *Peterson v. United States*, 133 S. Ct. 2783 (2013).  Nearly a year later,

on May 23, 2014, Petitioner filed his initial motion to vacate his sentence pursuant to 28 U.S.C. §

2255.  (ECF No. 1).  Following an administrative termination, Petitioner filed an amended

---

[3] "Although the Government frequently referenced the DNA evidence during its closing statement, it also commented that the DNA evidence was a 'throw-in.'  The Government further discussed evidence, including documents and physical evidence, which demonstrated that the suspects were wearing the same articles of clothing, such as gloves, shoes, and pants, both at the bank and the time of their apprehension, noting that this 'evidence is almost stronger than the DNA evidence.'"  *Muhammad*, 512 F. App'x at 158 n. 3.

motion to vacate on October 20, 2014.  (ECF No. 5).  On October 23, 2014, this Court ordered the Government to respond to the motion within forty-five days, or by December 8, 2014.  (ECF No. 7).  Within that forty-five days, the Government requested a sixty day extension, which this Court granted on December 4, 2014, extending the deadline to February 6, 2015.  (ECF No. 9).  On February 5, 2015, the Government requested a further two week extension, which this Court granted on February 6, 2015.  (ECF No. 10).  Ultimately, the Government filed their response, in the form of a brief in support of dismissal of the motion to vacate, on February 6, 2015.  (ECF No. 11).  After this Court terminated the motion to dismiss for failure to include a motion and proposed order in addition to a brief in opposition to the motion to vacate, the Government filed a formal motion to dismiss on March 4, 2015.  (ECF No. 12).  Petitioner filed neither a reply brief nor responded to the motion to dismiss.  Six months later, on or about September 22, 2015, Petitioner filed a motion to strike the motion to dismiss.  (ECF No. 14).

## II.    PETITIONER'S   MOTION   TO   STRIKE   THE   GOVERNMENT'S RESPONSE/MOTION TO DISMISS

Petitioner moves this Court to strike the Government's response, including the Government's motion to dismiss based on the argument that these documents were filed beyond the time period permitted by this Court.  Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Motions to strike, however, "are disfavored and usually will be denied 'unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case.'"  *Jones v. United States*, No. 10-3502, 2012 WL 2340096, at *2 (D.N.J. June 18, 2012) (quoting *River Road*

6

*Dev. Corp. v. Carlson Corp.*, No. 89-7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990). District Courts possess "considerable discretion" in deciding motions to strike. *Id.*

Petitioner asks this Court to strike the Government's motion to dismiss and direct the Government to file a response in accord with this Court's order to answer.  However, Petitioner's motion is based on a false premise: that the Government never responded to the Petition within the time allotted by the Court.  Based on the extensions granted by this Court, the Government's answer was due by February 20, 2015.  The Government filed its brief in support of the motion to dismiss, which also serves as its answer (responsive pleading) to Petitioner's motion to vacate, on February 6, 2015, well within the time permitted by this Court.  That the Government thereafter also filed a distinct motion to dismiss the petition has no bearing on the fact that the Government did respond to the § 2255 motion within the time permitted by this Court, and as such Petitioner's motion to strike shall be denied.

## III.  PETITIONER'S MOTION TO VACATE

### A.  Legal Standard

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence.  Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.  Unless the moving party claims a jurisdictional defect or a constitutional violation, to be entitled to relief the moving party must show that an error of law or fact constitutes

7

"a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert. denied* 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003).

### B.  Analysis

### 1.  An evidentiary hearing is not required

Under 28 U.S.C. § 2255, an evidentiary hearing is required for a motion to vacate "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *United States v. Booth,* 432 F.3d 542, 545 (3d Cir. 2005); *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992).  "Where the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by the petitioner or indicate[s] that petitioner is not entitled to relief as a matter of law, no hearing is required." *Judge v. United States*, --- F. Supp. 3d ---, ---, No. 13-2896, 2015 WL 4742380, at *3 (D.N.J. Aug. 11, 2015); *see also Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *see also United States v. Tuyen Quang Pham*, 587 F. App'x 6, 8 (3d Cir. 2014); *Booth*, 432 F.3d at 546.  For the reasons set forth below, Petitioner's claims are without merit and as such the record establishes that Petitioner is not entitled to relief as a matter of law.  No evidentiary hearing is therefore required for the disposition of petitioner's motion.

**2.  Petitioner's ineffective assistance of counsel claims**

In his motion, Petitioner asserts that his counsel was constitutionally ineffective.  The standard for evaluating such claims is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984).  To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient.  This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687*; see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007).  To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.
>
> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005).  A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.*  The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.*  In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.
>
> Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93.  "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.  The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299.  Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . .

9

without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge*, --- F. Supp. 3d at ---, 2015 WL 4742380 at *3-4.

Petitioner argues that his trial counsel was ineffective for failing to challenge the testimony of the Government's DNA expert at trial by hiring his own DNA expert, subpoenaing the technicians who performed the DNA testing in this case, and failing to request a curative instruction informing the jurors that "the underlying test for admitting the Government's DNA expert opinion should be for the purposes of assisting the jury in evaluating the expert's opinion and [that opinion is not admitted] for substantive purposes." As to prejudice, Petitioner offers no more than hypothetical suggestions that a DNA expert "could have refuted the possible defects in the DNA testing," that counsel "could have cross examined [the technicians] . . . to reveal possible defects in the procedure and analysis that might serve to create reasonable doubt," and that with a curative instruction "the outcome could have been different by casting reasonable doubt in the minds of the jurors as to the possible flaws and errors in the DNA testing which could have been inconclusive." (Document 5 at 16-19). Petitioner offers no concrete argument or concrete factual support for the prejudice prong of the *Strickland* test. Such bare allegations, without supporting factual allegations, are patently insufficient to warrant an evidentiary hearing, let alone a finding of ineffective assistance of counsel. *Palmer*, 592 F.3d at 395.

In any event, it is doubtful that Petitioner could have shown prejudice in this case even if he had provided further allegations. Where a petitioner's guilt is established at trial by

overwhelming evidence, that petitioner cannot show that he was prejudiced by counsel's errors unless he can provide "a considerable amount of new, strong evidence to undermine" his conviction. *Saranchak v. Beard*, 616 F.3d 292, 311 (3d Cir. 2010); *see also Copenhafer v. Horn*, 696 F.3d 377, 390 (3d Cir. 2012) ("[i]n light of the overwhelming evidence . . . we agree . . . that [the petitioner] cannot show he was prejudiced").  Here, all three of Petitioner's assertions of counsel's ineffectiveness rely on his belief that the DNA evidence produced at his trial was responsible for his conviction, and had counsel done more to fight that evidence, the result may have been different.  These arguments, however, ignore the staggering amount of physical and eye-witness evidence produced at trial.

On direct appeal, the Third Circuit held that the admission of the DNA testimony was harmless even if one assumes that that testimony ran afoul of the Confrontation Clause. *Muhammad*, 512 F. App'x at 158-59.  To make such a finding, the Third Circuit was required to conclude that "beyond a reasonable doubt . . . the error did not contribute to the jury's judgment of conviction." *Id.* at 158.  The Third Circuit was able to conclude the DNA testimony and evidence did not contribute to the jury's judgment of conviction because the Government produced a truly overwhelming quantity of other evidence which clearly established Petitioner's guilt. *Id.* at 158-59.  As the Third Circuit stated, this overwhelming evidence rendered the DNA testing "cumulative, if not superfluous." *Id.* at 158.  Petitioner therefore cannot show that he was prejudiced by counsel's alleged errors because the Government's case against Petitioner

> was formidable.  The evidentiary record connecting [Petitioner] to
> the crimes was overwhelming and convincing, particularly
> including the testimony of numerous witnesses who were present
> at virtually every stage of the robbery, chase, and apprehension, as
> well as bank surveillance footage in which the robbers could be
> seen wearing apparel that was confiscated from the defendants at
> the time of their arrest, and a wide array of physical evidence
> recovered from the getaway vehicles and the defendants

themselves, including the stolen case and security guard's gun, as
well as the perpetrators own weapons, apparel, and masks.

*Id.* at 158-59.  Given the overwhelming evidence presented at trial, and the Third Circuit's ruling

that the testimony of the DNA expert at trial did not contribute to the jury's verdict, this Court

must conclude that the alleged errors of counsel raised by Petitioner did not, in any way,

prejudice Petitioner.   *Saranchak*, 616 F.3d at 311; *Copenhafer*, 696 F.3d at 390.  As such,

Petitioner's claims of ineffective assistance of counsel must fail, and Petitioner's § 2255 motion

must be denied.  Because this Court will deny Petitioner's § 2255 motion, the Government's

motion to dismiss that motion is moot and will be denied as well.


## IV.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c) the petitioner in a § 2255 proceeding may not appeal

from the final order in that proceeding unless he makes "a substantial showing of the denial of a

constitutional right."  "A petitioner satisfies this standard by demonstrating that jurists of reason

could disagree with the district court's resolution of his constitutional claims or that jurists could

conclude that the issues presented here are adequate to deserve encouragement to proceed

further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  As Petitioner has failed to show that

he received ineffective assistance of counsel, he has failed to make a substantial showing that he

was denied a constitutional right, and jurists of reason could not conclude that his claims are

sufficient to warrant encouragement to proceed.  As such, this Court denies Petitioner a

certificate of appealability.

**V.  CONCLUSION**

For the reasons set forth above, Petitioner's motion to strike is DENIED; Petitioner's motion to vacate is DENIED; Petitioner is DENIED a certificate of appealability, and the Government's Motion to Dismiss is DENIED as moot.  An appropriate order follows.

Dated: October 9, 2015                              *s/ Susan D. Wigenton*
                                                           Hon. Susan D. Wigenton
                                                           United States District Judge